E. D. NALL, Assignee of E. D. NALL COMPANY, v. C. B. KELLY and His Guardian, ATTIE R. KELLY.

(Filed 27 October, 1915.)

**1. Vendor and Purchaser—Goods Sold—Verified Account—Evidence—Interpretation of Statutes.**

Revisal, section 1625, enacting that in actions for "goods sold and delivered, a verified itemized statement of such account shall be received in evidence, and shall be deemed *prima facie* evidence of its correctness," clearly imports by its express terms that it is confined to "goods sold and delivered"; and it was designed to facilitate the collection of such accounts where there was no *bona fide* dispute and to relieve the plaintiff in such instances of the expense and delay of formally taking depositions; and the terms of the statute are strictly construed.

**2. Same—Witnesses.**

An affiant who verifies an account of goods sold and delivered, which is to be received in evidence and taken as *prima facie* evidence of its correctness, under the provisions of the Revisal, section 1625, and cognate sections, shall be regarded and dealt with as a witness *pro tanto*, and to such extent must meet the requirements and is subject to the qualifications and restrictions as to other witnesses; and when it appears on the face of the account or affidavit that the affiant has no personal knowledge of the transaction, or has sworn to the matters stated in his affidavit on information and belief, he being incompetent to testify thereto as a witness, the affidavit does not come within the intent and meaning of the statute.

**3. Same—Transactions with Deceased.**

A verified itemized statement of an account made by the seller of goods, sought to be introduced and received as *prima facie* evidence of the sale and delivery thereof as therein stated, under the provisions of Revisal, section 1625, is construed to be in subordination to the provisions of the Revisal, section 1631, when it is shown that the purchaser, at the time of making the affidavit, was a lunatic, etc.; and should the affiant swear to the matters of account as within his own knowledge, his verification or affidavit, as stated, is ineffectual, being the testimony of a party interested in the transaction or communication sworn to. The principles held with reference to Revisal, sections 1622, 1623, commonly known as the Book Debt Law, discussed and distinguished.

**4. Vendor and Purchaser—Verified Accounts—Trials—Evidence—Nonsuit.**

Where a verified account or affidavit to a statement for goods sold and delivered is insufficient to establish a *prima facie* case, under the provisions of Revisal, section 1625, and this is the only evidence offered, a judgment of nonsuit upon the evidence is properly allowed.

APPEAL by defendant from *Devin, J.,* at the July Term, 1915, of LEE.

Civil action. The action was instituted by E. D. Nall, as owner and assignee of E. D. Nall Company, against C. B. Kelly, to recover an account for fertilizers and supplies sold to C. B. Kelly by the Nall Company, Incorporated, during the year 1912. It appearing that C. B. Kelly had been duly adjudged a lunatic, his guardian, Attie R. Kelly, was made party defendant.

There is also a count in the complaint, being section 3, alleging that said C. B. Kelly, now a lunatic, had agreed and promised to pay said account, the balance thereof amounting to $345.11, with interest from 1 November, 1912. Defendant answered, and in proper terms denied information or knowledge as to sales; denied the promise to pay as alleged in section 3, and denied the general allegation of indebtedness contained in section 4 of the complaint. On issues then joined, plaintiff, in support of his claim, offered in evidence a verified account, giving an itemized statement of all articles sold, with dates; also items of credit and dates, same being headed as follows:

SANFORD, N. C., 1 January, 1914.

Mr. C. B. Kelly, Broadway, N. C., in acct. with E. D. Nall Co., Inc.
    Fertilizer for Lee County farm, by M. B. Hudson.

Then follows itemized account, as stated, giving amount and date of the articles, and also amount and date of credits, the account showing a balance due as of 1 November, 1912, of $345.11, and same being verified at bottom in terms as follows:

E. D. Nall, having been duly sworn, says that he was an officer of the E. D. Nall Company, a corporation under the laws of the State of North Carolina, during the years 1912-1913, towit, secretary and treasurer, and as such duly authorized to make this affidavit; that the attached itemized statement of account for goods, wares and merchandise sold and delivered to C. B. Kelly is true and correct; that said items of goods, wares and merchandise therein named were actually delivered to C. B. Kelly, and that there is due and unpaid thereon the sum of three hundred forty-five and 11-100 dollars, with interest thereon from 1 November, 1912, until paid; that there are no offsets or counterclaims to the same.                                                                E. D. NALL.

Suscribed and sworn to before me this July 26, 1915.
                                                T. N. CAMPBELL, C. S. C.

Defendant objected to introduction of account; overruled, and defendant excepted. No further evidence being offered, there was motion of nonsuit; overruled, and defendant excepted. Verdict for plaintiff for balance due. Judgment on verdict, and defendant excepted and appealed.

*Williams & Williams for plaintiff.*
*Hoyle & Hoyle for defendants.*

HOKE, J., after stating the case: In Laws of 1897, ch. 480, it was enacted, "That in any action instituted in any courts of this State upon an account for goods sold and delivered, a verified itemized statement

of such account shall be received in evidence, and shall be deemed *prima facie* evidence of its correctness."

This law now appears in Revisal 1905, in the chapter on Evidence, section 1625, and is confined, as its terms clearly import, to actions on account for goods sold and delivered. *Hospital Association v. Hobbs,* 153 N. C., p. 188, and was clearly designed to facilitate this collection of claims about which there was no *bona fide* dispute, and to relieve the plaintiff in cases of that character of the expense and delay of formally taking depositions.

Statutes of this character, here and elsewhere, for obvious reasons, have very generally received a strict construction by the courts. *Knight v. Taylor,* 131 N. C., p. 84; *Mernam Co. v. Thomas Co.,* 103 Va., p. 24; *Foster and Webb v. Scott Co.,* 107 Tenn., 693.

And in this jurisdiction it has been very generally considered that an affiant who verifies an account, under this and cognate statutes, shall be regarded and dealt with as a witness *pro tanto,* and to such extent must meet the requirements and is subject to the qualifications and restrictions of other witnesses. *Atkinson v. Simmons,* 33 N. C., p. 416; *Kitchin v. Tyson,* 7 N. C., p. 314.

It will be noted that this section we are discussing contains no provision as to who shall make the affidavit, and the contents of a proper affidavit being given the force and effect of evidence, and the affiant being regarded, as we have seen, as a witness *pro tanto,* we are of opinion that the verification should be by some one competent to testify, if he were present, and when it appears on the face of the account and verification that the affiant has no personal knowledge of the transactions covered by the account, or that affiant, on the record, is otherwise incompetent to testify, in such case the account and affidavit offered does not come within the statutory provision, and the same, in this form, should not be received.

In the case before us, an examination of the account accompanying affidavit will show that the goods were bought, if at all, from E. D. Nall Company, a corporation, and that the company has assigned all of its choses in action, accounts, etc., to plaintiff.

So far as appears plaintiff, himself, does not seem to have had any personal knowledge of the transactions, but on the face of the account the goods purport to have been sold by M. B. Hudson.

The verification, therefore, appears to have been made on information from others, and if this be the true interpretation of this account, the plaintiff would not be able to testify to it as a witness, and should not be allowed to verify under the statute. *Kennedy v. Price,* 138 N. C., p. 173.

And if it were otherwise, if the verification should be held to proceed on personal knowledge of the affiant, in such case he becomes an

incompetent witness under section 1631 of the Revisal, prohibiting a party interested from testifying as to personal transactions or communications with an adversary who is, at the time the evidence is offered, deceased or a lunatic.  This section, 1631, enacted as necessary to protect the estate of deceased persons and lunatics from unconscionable claims, and based upon the gravest reasons of public policy, approved by repeated decisions of this Court, and found eminently desirable in practice, should not be set aside or impaired unless the purpose of the Legislature to do so is very clearly expressed, and we think this section, 1625, appearing as a section on the law of evidence, should be construed in subordination to section 1631, under the principle decided in *Cecil v. High Point,* 165 N. C., p. 431, and other similar decisions, and in cases presenting the question, however meritorious a particular demand may be, when it involves a personal transaction between a claimant and the estate of a lunatic or deceased person, it must be established by proper testimony, and under the statute as now drawn an *ex parte* affidavit of the living claimant should not be heard.   1 Corpus Juris., p. 665, citing *Swertt v. Wherry,* 4 Tex. Civ. App., 15 S. W., 121.

In making this decision, we are not inadvertent to cases in this State holding that sections 1622 and 1623 of Revisal are not subject to the provisions of section 1631 of the same chapter, VII of Revisal.  See *Leggett v. Glover,* 71 N. C., p. 211.

At the time our laws were enacted permitting parties to testify, and this section, 1631, was passed as necessary to the safe enforcement of such a policy, these sections, 1622 and 1623, commonly known as the Book Debt Law, had long been the law of the State, being very carefully drawn as to form and substance, and applying only to small sums, not greater than $60, they were supposed to have served a useful purpose, and it was held, in several cases, that they would still be recognized in the very restricted instances to which they could apply.  But while we have no disposition to disturb these cases, as correctly construing the sections referred to, we must decline to extend the principle further, and are of opinion, as stated, that under the terms of section 1625, as now drawn, an affiant, verifying an account so as to make the same *prima facie* evidence, must be a competent witness to the facts, and when it appears on the face of the account that he has not personal knowledge of these facts, or it is established that he is otherwise an incompetent witness, the *ex parte* account so verified should not be received in evidence, and when, as in this case, it is the only evidence offered, a nonsuit should be allowed.   There is error in refusing the defendant's motion to nonsuit, and the same is

Reversed.